Estate of Morris Menkus, deceased, Martin Menkus, Esq., Executor v. Commissioner.
Estate of Menkus v. Commissioner
Docket No. 88204.
United States Tax Court
T.C. Memo 1962-101; 1962 Tax Ct. Memo LEXIS 208; 21 T.C.M. (CCH) 559; T.C.M. (RIA) 62101; April 27, 1962
*208 Widow of decedent filed caveat against probate of decedent's will. After partial trial the case was settled by payment of $6,000 to widow, which amount was considerably in excess of the net probate estate. Held: Petitioner failed to prove what part, if any, of the payment to the widow was a bona fide recognition of the widow's claim as an heir of decedent which would qualify as an interest in property passing from decedent to his surviving spouse under section 2056, I.R.C. 1954. Marital deduction not allowed. Martin Menkus (executor), 1300 Kerper St., Philadelphia, Pa., for the petitioner. Richard A. Francis, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in estate tax against petitioner in the amount of $5,162.81. Of the total deficiency determined by respondent, petitioner has placed in controversy in this Court only the amount of $1,839.61 which results from respondent's determination that a $6,000 marital deduction was not allowable. The only issue for decision is whether the sum of $6,000 paid to decedent's surviving spouse as consideration for her release of certain claims is allowable as a marital deduction in determining decedent's estate tax. Findings of Fact Some of the facts were stipulated *210 and are so found. Morris Menkus, sometimes herein referred to as decedent, died testate on January 25, 1958. He was survived by his wife, Effie, whom he had married on July 22, 1957, and by his sons by a former marriage, Martin and David. Martin, who filed the petition in this case, is the duly qualified executor of decedent's estate. The original estate tax return was filed with the district director of internal revenue, Camden, New Jersey, on June 4, 1958. An amended return was filed with the same district director on November 19, 1958. During his lifetime decedent created five trusts executed on the following dates: February 21, 1950, September 15, 1956, December 17, 1956, and the last two on December 24, 1956. Decedent retained no interest in the first two trusts but retained a life estate in the last three. The remaining beneficial interests in each of these trusts were held by either Martin, or David, or David's son, Richard. The trust of December 17, 1956, named Martin as trustee and among its provisions was a direction that at decedent's death the funds of this trust could be used for the payment of any taxes due on decedent's estate and for "any expenses of Administration, *211 burial, tombstone, etc." After these purposes were satisfied, the remaining funds from this trust were to be paid over in equal shares to the two trusts created on December 24, 1956. The value of the three trusts in which decedent retained a life estate was included in his gross estate for estate tax purposes. Decedent executed a will on December 8, 1957, in which he left Effie nothing, and named Martin executor. [1] On or about February 13, 1958, Effie filed with the Surrogate's Office, Atlantic County, New Jersey, a caveat against the probate of decedent's will. The caveat proceeding was called to trial on October 1, 1958. The court heard testimony on behalf of both the proponents of the will and the caveatrix. One of the witnesses called by the caveatrix was an employee of decedent at the time of decedent's death and gave testimony indicating incompetence on the part of decedent. The court recessed for lunch after hearing the testimony of some of the witnesses. After lunch, the presiding judge, the surrogate, Martin, and Martin's attorney met in the judge's chambers. At this meeting the judge relayed to Martin an offer by Effie to settle the case for $7,500. This offer was rejected *212 by Martin but after some discussion Martin agreed to settle the controversy and pay Effie $5,000 if, in addition to releasing her claims against the estate, she would also join with the estate in making a joint income tax return for herself and decedent for the year 1957 and would agree that any income tax refund for that year would go to the estate. This offer was relayed to Effie who counteroffered with $6,000, which, after further discussion, was accepted by Martin. A judgment was entered on October 2, 1958, admitting decedent's will to probate and granting letters testamentary to Martin. Sometime in October 1958 Effie executed a written release of all claims she had against decedent's estate, against Martin Menkus and David Menkus, individually and as executors or trustees, against decedent's inter vivos trusts, particularly any claims she might have as widow of Morris Menkus or beneficiary or next of *213 kin in connection with his estate, and any claim she had to a refund of income tax resulting from the filing of a joint return by her and the estate for the year 1957. The consideration for this release as recited in the agreement was $6,000 paid to her by the estate of decedent, Martin Menkus and David Menkus, individually and as executors or trustees. The $6,000 was paid to Effie by cashier's check dated October 9, 1958. This settlement was approved by a supplemental order of the Atlantic County Court, Probate Division, dated March 3, 1960, signed by the presiding judge at the caveat proceedings trial. The order stated that the court had found from the testimony adduced in open court some merit in the contentions of both parties and that the court considered the proposed settlement a fair and proper settlement. It then ordered nunc pro tunc that the proponents of the will, Martin and David Menkus, "pay out of the Estate funds the sum of $6,000.00" to Effie, on the condition that she withdraw her caveat and execute a general release in favor of the estate. At the time of the settlement, the probate estate of decedent had a value of $2,938.73 before expenses. Subsequent to the settlement, *214 the estate received an income tax refund of $960.15 plus interest as a result of an overpayment of joint income tax for decedent and Effie for the year 1957. The estate tax return filed for the estate reported no real estate owned by decedent at the date of his death. The amended estate tax return filed November 19, 1958, reported a gross estate of $291,079.32, most of which was comprised of the assets of the three inter vivos trusts in which decedent had retained an interest for life. The amended estate tax return deducted from the gross estate as "funeral expenses and expenses incurred in administering property subject to claims" the sum of $2,864.47; it also claimed the $6,000 paid to Effie as a marital deduction. At the time the $6,000 settlement was made Martin was of the opinion that there was a reasonable possibility that the caveat would be sustained, that decedent would be declared intestate, and that under New Jersey law Effie would be appointed administratrix of the estate. At the time he agreed to the $6,000 settlement, Martin, who was a lawyer and who had done some research into the law on the subject, was of the opinion that Effie had no standing under the law of New *215 Jersey to attack any of the inter vivos trusts created by decedent. The $6,000 was deducted as a marital deduction on the amended estate tax return filed by petitioner on November 19, 1958, with the following explanation: Surviving spouse filed a caveat against grants of Letters Testamentary to executors named in will. This lawsuit was tried in Atlantic County Probate Court and ended with a settlement signed in Judge's Chambers whereby surviving spouse received $6,000 and agreed to withdraw her caveat. Respondent determined that this was not an allowable deduction because it was "paid to widow in settlement of a non-bona fide claim." Opinion The issue is whether the $6,000 paid by the decedent's estate to the decedent's surviving spouse, Effie, as consideration for her release of certain claims is deductible from decedent's gross estate under the marital deduction provisions of section 2056(a) of the Internal Revenue Code of 1954. [2] The rather meager facts gleaned from the stipulation of facts, the exhibits introduced in evidence, and the testimony of Martin and his wife are set out in the findings and we will refer in this Opinion only to those *216 facts that are pertinent to our decision. In essence, the grounds for petitioner's contention that the $6,000 settlement payment is allowable as a marital deduction are that the payment was made pursuant to a decision or order on the merits of a local court and hence is allowable under section 20.2056(e)-2(d)(2), Estate Tax Regs., and/or the payment was an arm's-length recognition of the enforceable rights of the surviving spouse in the decedent's estate and therefore qualifies as a marital deduction under the rationale of Lyeth v. Hoey, 305 U.S. 188 (1938), Estate of Gertrude P. Barrett, 22 T.C. 606 (1954), and Estate of Leo J. Dutcher, 34 T.C. 918 (1960). Respondent contends that the payment was a gratuitous one and not a bona fide recognition of enforceable rights of the surviving spouse in decedent's estate. Section 2056(a) of the Code provides in part as follows: the value of the taxable estate shall, * * * be determined by deducting from the value of the *217 gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * * The only pertinent part of section 2056(e) of the Code is as follows: (e) Definition. - For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if - * * *
(2) such interest is inherited by such person from the decedent; In this case no interest passed to the surviving spouse through the will of decedent or through any of the inter vivos trusts created by decedent. However, section 20.2056(e)-2(d)(2), Estate Tax Regs., in defining an interest which "passed from the decedent to his surviving spouse," provides: If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his *218 surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse. This interpretation of section 2056(a) of the Code was approved with some amplification in Estate of Gertrude P. Barrett, supra.
Were it not for the peculiar facts in this case we would be constrained to hold that the entire $6,000 paid to Effie qualified for the marital deduction. In Lyeth v. Hoey, supra, the Supreme Court held that *219 property received by an heir in settlement of a will contest is treated as if it were acquired by inheritance. See James F. Edwards, 37 T.C. 1107 (Mar. 19, 1962). In Estate of Gertrude P. Barrett, supra, and Estate of Leo J. Dutcher, supra, this Court applied the rule of Lyeth v. Hoey, supra, to allow as a marital deduction amounts paid to a surviving spouse out of the deceased spouse's estate in settlement of a bona fide claim by the surviving spouse as an heir of decedent. Similar to the situation in the Barrett case, the only reason Effie had any standing to claim a share of decedent's estate was her legal relationship to him. Any part of the $6,000 paid to Effie as a bona fide settlement of her claim as an heir of decedent, we think, would qualify for the marital deduction as property inherited by a surviving spouse from the decedent under section 2056(a) and (e)(2) of the Code and as property acquired in bona fide recognition of enforceable rights of the surviving spouse in decedent's estate, as provided in section 20.2056(e)-2(d)(2), Estate Tax Regs. We think it is clear from the evidence that the caveat proceeding was a *220 bona fide effort on Effie's part to contest the will and take at least what she would have been entitled to had decedent died intestate, and that the settlement was an arm's-length agreement between Effie and Martin. But our problem here is to determine how much, if any, of the $6,000 paid to Effie was in recognition of the value of her claim as an heir of decedent, and how much of it was for something else. So far as we can tell from the record before us, Effie was at the time of the settlement attacking only the validity of the will and had made no attack on any of the trusts. Martin, as an attorney, testified that he thought Effie had some chance to upset the will but had no chance, or at least not more than "about a million to one," of successfully attacking the trusts in a separate proceeding. If this is so, if Effie had prosecuted her caveat to a successful conclusion and the court had decreed the will invalid and the decedent intestate, the most Effie could have gained was the share of a surviving spouse in the estate of an intestate decedent, which, under New Jersey law, [3] would have *221 been one-third of the probate estate after payment of claims. The probate estate was originally $2,938.73 and a refund of income tax for 1957 plus interest brought the total gross probate estate to about $4,000. At the time of the settlement the expenses chargeable to the estate totaled $2,522 and eventually totaled over $2,850. So at the time of the settlement it would appear that the most Effie could have gotten from the estate as an heir was one-third of approximately $1,500. Yet she was paid $6,000. The supplemental order of the Probate Court did not pass on the facts upon which deductibility of the property interest passing to the surviving spouse depends, so petitioner does not have the benefit of the presumption contained in the regulations above quoted that the payment to Effie was a bona fide recognition of her enforceable rights in decedent's estate. Indeed, we find it hard to understand how the Probate Court could have ordered that Martin and David "pay out of the Estate funds the sum of $6,000 to the caveator, Effie Menkus," when that amount apparently far exceeded the probate estate over which the court had jurisdiction. *222 We think it is obvious that at least a part of the $6,000 was paid to Effie for something other than in recognition of the value of her claim as an heir of decedent. We do not think the cases cited above stand for the proposition that any part of a settlement paid for something other than a spouse's claim as an heir be included in the marital deduction. Such would not be an interest in property inherited from the decedent and would not be considered as passing from decedent to his surviving spouse under section 2056(a) and (e) of the Code. See sec. 20.2056(a)-2(b)(2), Estate Tax Regs. [4]
*223 Martin testified that in agreeing to pay Effie $6,000 he took into consideration a number of things other than the value of Effie's claim as an heir of decedent. He also considered such factors as Effie's agreement to join in a joint income tax return for 1957 and to release in favor of the estate any claim on a tax refund for that year, that a successful upset of the will would have resulted in Effie being appointed administratrix, in which event the estate would have been drained by administrator's fees, counsel fees, and accountant fees; whereas Martin, as executor, intended to perform all these functions at no cost to the estate. Petitioner contends that these factors should be considered in determining whether the settlement was an arm's-length recognition of Effie's enforceable rights in decedent's estate. These factors would be appropriate criteria in determining whether the settlement was at arm's length generally, but in the context of the issue here they only serve to point up that at least a part of the payment to Effie was for something other than property interests that might have passed from decedent to her. Martin and David had a personal interest in the settlement *224 of Effie's claims both as heirs of decedent's estate and as beneficiaries of the three trusts established by decedent not long before his death. Under the trust dated December 17, 1956, the trustee was authorized to use any funds remaining therein at decedent's death to pay taxes due from the estate and "any expenses of Administration, burial, tombstone, etc." After payment of such funds the remainder of the trust estate was to be divided equally between the two trusts dated December 24, 1956, of which Martin and David were beneficiaries. It was obviously to their advantage to settle Effie's claim and permit Martin, who is a lawyer, to handle the administration of the estate himself. We think at least a part of the payment to Effie was to avoid the possible complications and expense that would have arisen had the will been upset and Effie had been appointed administratrix - and that this, in effect, represented payments made by Martin and David personally and not by the estate. We have no way of knowing from the record before us, except by pure conjecture, what part of the $6,000 may have been paid in bona fide recognition of the value of Effie's claim as an heir of the decedent, and *225 what part may have been paid for other reasons that would not qualify it for the marital deduction. Furthermore, we do not know from the record the source of the funds used to pay Effie. While petitioner alleges in an amended petition that the $6,000 was paid from funds in the trust dated December 17, 1956, the allegation was denied by respondent and no evidence was introduced to prove the allegation. The only evidence we have on this point is a cashier's check from the Boardwalk National Bank of Atlantic City, New Jersey, payable to Effie and her attorneys in the amount of $6,000. The account to which it was charged is not shown. But even if the amount was paid from the trust funds, which were not a part of the probate estate and were authorized to be used only for payment of taxes, costs of administration, and burial expenses, there is considerable doubt that a payment from that source would qualify as an interest in property passing from decedent to his surviving spouse under section 2056 of the Code. Respondent disallowed the entire $6,000 as a deduction on the ground that it was "paid to widow in settlement of a non-bona fide claim." The burden is on petitioner to prove wherein *226 respondent's determination was in error. Petitioner has failed to prove what part, if any, of the $6,000 paid to Effie was in payment of a bona fide claim of Effie as an heir of decedent which would qualify as an interest in property passing from decedent to his surviving spouse under section 2056 of the Code. Consequently, no part of the payment to Effie can be allowed as a marital deduction. Decision will be entered for the respondent. Footnotes
1. These facts can be gleaned only from the supplemental order of the Probate Court entered in the caveat proceedings and from a statement made in the estate tax return. The will was not offered in evidence and there was no testimony or other evidence with respect thereto.↩
2. All section references will be to the 1954 Code unless otherwise indicated.↩
3. N.J. Stat. Ann., sec. 3A:4-2↩ (Supp. Dec. 1961).
4. (2) If a deduction is allowed under section 2053 (relating to deductions for expenses and indebtedness) by reason of the passing of a property interest from the decedent to his surviving spouse, such interest is, to the extent of the deduction under section 2053, a "nondeductible interest." Thus, a property interest which passed from the decedent to his surviving spouse in satisfaction of a deductible claim of the spouse against the estate is, to the extent of the claim, a "nondeductible interest" (see § 20.2056(b)-4). Similarly, amounts deducted under section 2053(a)(2) for commissions allowed to the surviving spouse as executor are "nondeductible interests." * * *↩