ESTATE OF BENJAMIN SIKLER, c/o ST. JOSEPH VALLEY BANK, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sikler v. Commissioner
Docket No. 9941-80.
United States Tax Court
T.C. Memo 1981-587; 1981 Tax Ct. Memo LEXIS 154; 42 T.C.M. (CCH) 1389; T.C.M. (RIA) 81587; October 8, 1981. Anthony J. Iemma, for the petitioner. Judy Jacobs, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioner's Federal estate tax of $ 25,719.50 and an addition to tax under the provisions of section 6651(a)(1)[1] in the amount of $ 9,235.67. At issue are (1) *156 whether petitioner is entitled to a marital deduction in excess of the amount allowed by respondent, and (2) whether there was reasonable cause for the late filing of the estate tax return. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and the attached joint exhibits are incorporated herein by reference. Benjamin Sikler died on November 25, 1975. The St. Joseph Valley Bank was named the administrator of his estate. At the time of the filing of the petition in this case the principal place of business of the St. Joseph Valley Bank was located in Indiana. Under Benjamin Sikler's will his personal effects were to be left to his wife, Julia Sikler. His residuary estate was divided into two trusts labelled "Trust A" and "Trust B." Trust A was to contain that fraction of his residuary estate which would secure for the estate the maximum marital deduction allowable under the Federal estate tax laws. The will gave Julia Silker the right to the income from Trust A for her life and a testamentary *157 power of appointment over the remainder. On December 30, 1975, Julia Sikler was indicted by an Indiana grand jury for the first degree murder of Benjamin Sikler. On July 15, 1976, she entered a plea of guilty to the charge of voluntary manslaughter. She was sentenced to two years in prison but was given credit for 193 days spent in the county jail awaiting trial. On November 12, 1976, the St. Joseph Valley Bank filed a Petition to Construe Will in the Elkhart Superior Court for Elkhart County, Indiana. The petition stated that the will left Julia Sikler an interest in the estate, and requested "the determination of the Court as to her rights to share in the distribution thereof pursuant and under construction of Section 29-1-2-12 Indiana Code." In 1976 IND. CODE sec. 29-1-2-12 provided in part: A person who shall have been legally convicted of intentionally causing the death of another, or of aiding or abetting therein, shall, in accordance with the rules of equity, become a constructive trustee of any property, real or personal, acquired by him from the decedent or his estate *158 because of such death, for the sole use and benefit of those persons legally entitled thereto other than such guilty person. * * * Had Julia Sikler been unable to inherit because of this statute, her share of the estate would have passed under the Indiana laws of intestacy to Paul and Renee Sikler (the children of Benjamin and Julia Sikler). Thus, the legal guardian of Paul and Renee Sikler employed an attorney to represent their interests in the will contest proceedings. The will contest was hotly disputed by the parties, but on April 25, 1978, a cmpromise agreement was entered into between Julia Sikler, Paul and Renee Sikler (by their appointed guardian), and the St. Joseph Valley Bank. The agreement provided in part as follows: COMPROMISE AGREEMENT
THIS AGREEMENT entered into by and between Julia Sikler, Paul Sikler and Renee Sikler by their duly appointed Guardian, Shirley Weiss, and the St. Joseph Valley Bank, as Administrator of the Estate of Benjamin Sikler, Deceased, and as nominated Trustee under the Last Will and Testament of Benjamin Sikler, WITNESSETH That the parties agree as follows: 1. The Estate of Benjamin Sikle was duly opened in the Elkhart Superior *159 Court, under Estate No. 8517 on November 25, 1975. At that time a Last Will and Testament dated the 16th day of July, 1974, was duly admitted to probate as the Last Will and Testament of Benjamin Sikler. 2. A controversy exists regarding the proper construction of this Will under IC 29-1-2-12 and consequently a controversy exists regarding the proper disposition of the assets of the Estate of Benjamin Sikler. 3. The parties to this Agreement represent all of the interested parties in the Estate of Benjamin Sikler and in order to resolve the above described controversy, have entered into this Compromise Agreement pursuant to the requirements of IC 29-1-9-1 et. seq.
4. An Irrevocable Trust shall be created by Julia Sikler which shall provide for the life income of the trust to be paid to Julia Sikler with the remainder interest in the trust to be divided between Paul Sikler and Renee Sikler. All of the terms of said trust are described in the Trust instrument, which is attached hereto and made a part hereof and marked as Exhibit "A". 5. Provided that she fully complies with the terms of this Agreement, Julia Sikler will receive all of Benjamin Sikler's household goods *160 as her absolute property, all of the automobiles titled in either Benjamin Sikler's name or in Benjamin Sikler and her name jointly as her absolute property, and upon the approval of this Compromise Agreement by the Court or as soon thereafter as reasonably possible, the sum of Fifteen Thousand Dollars ($ 15,000.00) from the Estate of Benjamin Sikler. 6. The following real estate interests shall be transfered by the Estate of Benjamin Sikler and by Julia Sikler to the Trust which is described in Paragraph 4 of this Agreement and which is attached hereto and marked as Exhibit "A": (a) An undivided one-fourth (1/4) interest in the following described real estate located in the Township of Mottville, County of St. Joseph, in the State of Michigan, and more particularly described as follows: (b) An undivided one-fourth (1/4) interest in the following described real estate located in Elkhart County, in the State of Indiana, to-wit: 7. The net proceeds from the sale of the residence which Julia Sikler owned by a tenant by the entireties with Benjamin Sikler, located in Elkhart County, State of Indiana, shall be paid to the Trustee. The term "net proceeds from the sale" means *161 the sale proceeds less any mortgages or liens outstanding against said real estate at the time the sale is concluded. This money must be invested in a new home within six (6) months after its receipt by the Trustee. 8. At the time the Trustee purchases a new home, for Julia Sikler, the Trustee shall use the funds provided for in paragraph 7 and will further provide the balance necessary to fulfill the purchase obligations from the general funds of the Trust. In other words, the Trustee will utilize the sum referred to in paragraph 7 and in addition will provide whatever sum is necessary in order to pay the purchase price on a new home for Julia Sikler. The home which is to be purchased, shall be comparable to the home which is to be sold pursuant to paragraph 7 in its physical dimensions, state of repair, and neighborhood location. The home shall be titled in Julia Sikler's name but upon the closing date, Julia Sikler shall give the trust a first mortgage on the real estate to secure the portion of the purchase price provided for the purchase of the home by the Trust. If the home is sold at a subsequent date, the entire balance owed on this mortgage shall be first paid to *162 the Trust with the balance of any sale proceeds going to Julia Sikler. The obligations secured by this mortgage shall not bear interest but shall in all other aspects be in the form of a standard mortgage agreement. 9. The entire balance of the Benjamin Sikler Estate and the entire balance of any and all other assets presently held by Julia Sikler and Benjamin Sikler as tenants by the entireties or as joint tenants shall be transferred to the Irrevocable Trust described in Paragraph 4 which is attached hereto and marked as Exhibit "A" to be administered and disposed of pursuant to the terms of said Trust. The terms of the Last Will and Testament of Benjamin Sikler to the extent they are inconsistent with the terms of this Compromise Agreement are hereby abrogated and termination, including the provision for the creation of Testamentary Trusts under said Last Will and Testament. 11. The execution of this Agreement does not constitute an admission on the part of any of the parties that the Will or any of the terms thereof is either valid or invalid under IC 29-1-2-12. On December 28, 1978, the Elkhart Superior Court entered an order which approved the Compromise Agreement *163 and the creation of the Irrevocable Trust thereunder. In its Federal estate tax return petitioner claimed a marital deduction under section 2056 in the amount of $ 143,703.48. In his notice of deficiency, however, respondent limited the marital deduction to the value of the following property received under the terms of the Compromise Agreement: Cash
$ 15,000
Automobile
4,292
Household goods
1,750
$ 21,042
The value of Benjamin and Julia Sikler's personal residence was listed on the estate tax return as $ 39,200, and was subject to an outstanding mortgage of $ 17,595.44. The estate tax return of petitioner was originally due nine months after the date of death, or August 25, 1976. See section 6075(a)9 In an application for extension (Form 4768) dated August 25, 1976, the St. Joseph Valley Bank requested an extension of the filing and payment due dates, stating that problems in determining whether Julia Sikler was entitled to inherit under the decedent's will had made it difficult to file an accurate return within the prescribed time frame. On September 3, 1976, the Internal Revenue Service granted an extension of both due dates to February 25, 1977. *164 In an application for extension dated February 17, 1977, the St. Joseph Valley Bank requested an additional six-month extension to file until November 25, 1977, again citing the unresolved dispute over Julia Sikler's rights under the will as the reason for its inability to meet the existing deadline. In addition, the bank requested that the due date for payment of the estate tax liability be extended six months. On February 25, 1977, the Internal Revenue Service denied the request to extend the filing deadline, but did grant an extension of the payment due date to August 25, 1977. At all relevant times the individual with the ultimate responsibility for the timely filing of the Sikler estate tax return was Mr. James Searcy, the head of the St. Joseph Valley Bank Trust Department. The direct responsibility for handling the Benjamin Sikler estate was initially lodged with Mr. James Rickhoff, a trust officer of the bank. He left the bank at the end of 1976 and was replaced by Mr. Leonard Whitfield, who had 20 years of experience as a trust officer. Mr. Whitfield commenced part-time employment with the bank in February 1977, and went to full-time status in April 1977. He first *165 became involved with the Benjamin Sikler estate in June 1977. At that time Mr. Whitfield received the impression from conversations with an administrative assistant at the bank that an extension of the filing date for the estate tax return had been granted to November 25, 1977. It was not until late September or early October of 1977 that Mr. Whitfield learned that the bank's second request for extension of time to file had been denied and the return was delinquent. The estate tax return was eventually filed on December 28, 1977, approximately ten months past the due date. The failure of the St. Joseph Valley Bank to file the return on a timely basis was not due to reasonable cause. OPINION 1. Marital Deduction
We must decide the amount of the marital deduction which petitioner was entitled to claim on its Federal estate tax return. Respondent contends that the amount is limited to the value of the property passing to Julia Sikler under the terms of the Compromise Agreement, rather than the amount 1976. See section 6075(a). In an application for will, as claimed by the petitioner. We agree with respondent. *166 Under section 2056(a)[2] a marital deduction is allowed for all property includable in the gross estate which "passes or has passed from the decedent to his surviving spouse." Section 2056(e)[3] sets forth the circumstances under which property will be considered as passing from the decedent to any person, and provides in part that property will be deemed to "pass" if it is received by bequest, devise or inheritance from the decedent. However, where the surviving spouse surrenders her right to receive any portion of the decedent's estate pursuant to a compromise agreement in settlement of a will contest, the regulations provide that such property will not be considered to have passed to the surviving spouse. Section 20.2056(e)-2(d)(1), Estate Tax Regs., states as follows: *167 (d) Will contests. (1) If a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse." Respondent contends that the central issue in this case is not, as petitioner contends, whether the property Julia Sikler was to receive under the terms of the will was a terminable or nonterminable interest under section 2056(b), but rather whether any property in excess of the amount received under the Compromise Agreement can be deemed to have "passed" to Julia Sikler in light of the foregoing regulation. We think respondent has pinpointed the issue correctly and find section 20.2056(e)-2(d)(1) to be dispositive thereof. We considered the effect of the predecessor to this regulation in Estate of Tebb v. Commissioner, 27 T.C. 671, 682-684 (1957). In that case the decedent's will left his residuary estate to his wife. In order to avoid a will contest she and the decedent's children entered into an agreement whereby *168 the children agreed not to contest the will, and she agreed, among other things, to leave the children under the terms of her will the entire balance of the decedent's residuary estate remaining at her death. The decedent's estate took the position that the entire residuary estate passed to the surviving spouse upon his deth within the meaning of section 812(e), Internal Revenue Code of 1939, the forerunner of the present section 2056. Further, the estate argued that the subsequent disposition of the property under the compromise agreement had no effect on the status of such property for purposes of determining the amount of the marital deduction. We concluded that the case fell squarely within the ambit of section 81.47a(g), Regs. 105, whose language was virtually identical to the language of present section 20.2056(e)-2(d)(1). In commenting on the origin of this regulation we stated (27 T.C. at 683): The foregoing provision of the Treasury regulations finds support in the legislative history of section 812(e). Subsection (e) was added to section 812 by section 361 of the Revenue Act of 1948. The report of the Senate Finance Committee accompanying such Act *169 states: If the surviving spouse takes under the decedent's will, the interest passing to her is determined from the will. * * * If, as a result of a controversy involving a bequest or devise to the surviving spouse, such spouse assigns or surrenders an interest in property pursuant to a compromise agreement in settlement of such controversy, the amount so assigned or surrendered is not deductible as an interest passing to such spouse. * * * [S. Rept. No. 1013 (Part 2), 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 334.] We think it clear that Congress intended no marital deduction allowance with respect to an interest in property passing by bequest or devise to a surviving spouse, which such spouse in settlement of a controversy with respect thereto, assigned or surrendered to another. Thus, we held that the amount of the marital deduction was limited to the value of the property passing to the surviving spouse under the compromise agreement, provided such property also satisfied the other requirements of section 812(e). Since the interest she received pursuant to the agreement was a nonqualifying terminable interest as defined in section 812(e)(1)(B), this *170 Court sustained the Commissioner's disallowance of the entire marital deduction. Estate of Tebb v. Commissioner, supra at 684. The current version of this regulation, section 20.2056(e)-2 (d)(1), Estate Tax Regs., has been similarly applied by other courts. See Citizens & Southern National Bank v. United States, 451 F.2d 221 (5th Cir. 1971); United States Trust Co. of New York v. Commissioner, 321 F.2d 908 (2d Cir. 1963), cert. denied 376 U.S. 937 (1964); Waldrup v. United States, 499 F. Supp. 820 (N.D Miss. 1980); Pastor v. United States, 386 F. Supp. 106 (E.D. N.Y. 1974). On its reply brief the petitioner makes an attempt to distinguish these cases from the present case, but its efforts are unconvincing. The plain language of section 20.2056(e)-2(d)(1) leaves us no alternative but to hold that the property interests which Julia Sikler surrendered in order to settle the will contest did not pass to her within the meaning of section 2056(a) and (e), and therefore cannot qualify for the marital deduction. The remaining question involves a determination of the value of property *171 received by Julia Sikler which does qualify for the marital deduction. In his notice of deficiency respondent conceded that the following property received by her under paragraph 5 of the Compromise Agreement qualifies: Cash
$ 15,000
Automobile
4,292
Household goods
1,750
$ 21,042
Prior to trial respondent also conceded that Julia Sikler's equity in the marital residence ($ 21,604.56), which she received under the terms of paragraphs 7 and 8 of the Compromise Agreement, also qualifies for the deduction. Respondent allowed no deduction for the value of the life income interest which she received under the terms of paragraph 4, presumably because this constitutes a nonqualifying terminable interest. See Estate of Tebb v. Commissioner, supra at 684. The petitioner did not challenge any of these figures at trial or on brief, and our examination of this record discloses nothing which would suggest that petitioner is entitled to claim any greater amount. We hold, therefore, that the allowable marital deduction is $ 42,646.56. 2. Late Filing of Return
*172 Section 6651(a)(1) imposes an addition to tax where the taxpayer's return is filed after the prescribed due date unless the delay is due to reasonable cause. Section 301.6651-1(c)(1), Proced. & Admin. Regs., provides that reasonable cause exists where the taxpayer exercises ordinary business care and prudence and is still unable to file the return within the statutory time period. Petitioner's return was originally due on August 25, 1976. Upon request the respondent granted a six-month extension to February 25, 1977. Petitioner then requested a second extension of the filing deadline but it was denied. The return was not filed until December 28, 1977, over ten months late. On brief petitioner advances several explanations as to why the administrator of the estate, the St. Joseph Valley Bank, was unable to file the return on time. We have reviewed the record and find none of these explanations persuasive. Petitioner argues that the bank delayed in filing the return because the outcome of the pending will contest would affect the computation of the tax due. Even if we were to assume that this was the case, this Court has previously held that a taxpayer cannot justifiably delay *173 the filing of its return in order to await the outcome of litigation which might affect the computation of its tax liability. See Estate of Duttenhofer v. Commissioner, 49 T.C. 200, 206-207 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). [4] Rather, the taxpayer must simply file the return based on the best information available and file a subsequent amended return should this prove to be necessary. In any event, we are not convinced that the late filing was in fact due to a conscious decision by St. Joseph Valley Bank officials to await the resolution of the will dispute. [5] Nor are we persuaded by petitioner's other arguments to the effect that *174 difficulties in determining the estate's assets, allegedly caused in part by the unavailability of Julia Sikler due to her incarceration, necessitated the delay. Instead, the record leads us to believe that the late filing was caused by neglect on the part of the responsible bank officials. The trust officer who had been directly responsible for the Sikler estate, Mr. James Rickhoff, resigned at the end of 1976. His replacement, Mr. Leonard Whitfield, was not hired until February 1977 and was only a part-time employee prior to April 1977. According to Mr. Whitfield's testimony, his first direct exposure with the Sikler estate came in June 1977. At that time he was advised by an administrative assistant that an extension to file the return had been granted to November 25, 1977, when in fact an extension had been granted only with respect to the payment due date (August 25, 1977). Although he became aware of the true facts in early September or late October, he still delayed filing the return until December 28. We fail to see in these facts any hint of the exercise of ordinary business care or prudence. No explanation is offered for the bank's failure to meet the February 25 *175 due date, although the delay in filling the vacant trust officer position was apparently a contributing factor. Mr. James Searcy, who was the head of the bank's trust department during the time of the events in question, did not testify and we are not told who was directly responsible for the Sikler estate in the intervening period, although the ultimate responsibility was clearly his. But one thing seems certain to us--the problem was internal rather than external. Shifting the responsibility for the delay from one bank official to another does not excuse the late filing of petitioner's estate tax return. As the administrator of the Sikler estate the bank was responsible for timely filing the return, and through neglect it failed to discharge this responsibility. Accordingly, we hold that petitioner has not established reasonable cause for the late filing and the addition to tax is sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.↩
2. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. ↩
3. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (e) Definition.--For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if-- (1) such interest is bequeathed or devised to such person by the decedent; (2) such interest is inherited by such person from the decedent; (3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent; (4) such interest has been transferred to such person by the decedent at any time; (5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship; (6) the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or (7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person.↩
4. In Estate of DiPalma v. Commissioner, 71 T.C. 324↩ (1978), we held that reasonable cause existed where an executrix with no business experience relied on the advice of an attorney that pending litigation involving the estate justified the delay in filing the estate tax return. The facts of the present case are clearly distinguishable, however, because the administrator of the Sikler estate was a professional fiduciary and there was no reliance on the advice of a third party.
5. The bank's stated intentions on this point are belied by its actions: the return was actually filed four months before the Compromise Agreement was entered into.↩